UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RODNEY D. JONES,                    )
                                    )
        Petitioner,                 )
                                    )       No. 4:06CV01225 CDP/FRB
                                    )
    v.                              )
                                    )
                                    )
TROY STEELE,                        )
                                    )
        Respondent.[1]              )


**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**


This cause is before the Court on the petition of
Missouri state prisoner Rodney D. Jones ("petitioner") for a writ
of habeas corpus pursuant to 28 U.S.C. § 2254. All pretrial
matters were referred to the undersigned United States Magistrate
Judge, pursuant to 28 U.S.C. § 636(b), for appropriate disposition.

**I.    Procedural History**

On April 22, 2003, a jury in the Circuit Court for St.
Louis County, Missouri convicted petitioner of robbery in the first
degree after finding that, on September 4, 2000, he robbed a hotel
desk clerk. (Respondent's Exhibit ("Resp. Exh.") A at 5-6, 43.)[2]

---

[1]Because petitioner is challenging a sentence to be served in the future,
Missouri Attorney General Chris Koster should be added as a proper party
respondent. Rule 2(a), (b), Rules Governing Section 2254 Cases in the United
States District Courts.

[2]The record shows that petitioner failed to appear on his original trial
date of April 10, 2001, and remained at large and a fugitive from justice until
his apprehension on June 11, 2002. (Resp. Exh. A at 27.)

-1-

On May 30, 2003, the Honorable John A. Ross sentenced petitioner as a persistent offender to 25 years in the custody of the Missouri Department of Corrections. (Resp. Exh. C at 6.) Petitioner is currently confined in the Southeast Correctional Center in Charleston, Missouri.

Petitioner appealed his conviction and sentence to the Missouri Court of Appeals, alleging that the trial court erred in refusing to submit his proposed jury instructions instructing the jurors on the defense of duress, in violation of petitioner's right to due process of law and to present a defense as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution. (Resp. Exh. D.) In support, petitioner argued that he was under duress when he committed the robbery because a corrupt police officer named Martini Haynes had planted cocaine in his car, told him that he owed him money for the drugs, threatened to kill him and/or his family if he did not repay the debt, and had shot him in the leg. (Id.) On May 4, 2004, the Missouri Court of Appeals, Eastern District, affirmed petitioner's conviction and sentence, finding no evidentiary support for the submission of the defense of duress. (Resp. Exh. G); State v. Jones, 133 S.W.3d 555 (Mo. Ct. App. 2004).

On July 13, 2004, petitioner filed a pro se post-conviction motion and request for an evidentiary hearing pursuant to Missouri Supreme Court Rule 29.15. (Resp. Exh. H at 3-19.) Counsel was subsequently appointed, and filed an amended post-conviction motion and request for evidentiary hearing on October

18, 2004. (Id. at 1, 23-65.) Therein, petitioner alleged that trial counsel was ineffective because she: (1) failed to fully investigate that Officer Haynes planted cocaine in petitioner's car, that Officer Haynes told petitioner that he better "rob someone or something" to repay him, and that petitioner was shot; and failed to prepare him and his witnesses Gail Smart, Donald Scott, and Latecia Adams; (2) failed to adequately prepare an opening statement, inasmuch as she made several misstatements regarding the facts of the case; (3) had a conflict of interest because petitioner had unsuccessfully requested that she be removed from his case due to lack of preparation; (4) failed to advise petitioner that he could be cross-examined on all of his prior felony convictions; (5) failed to investigate FBI agent James Harrison; and (6) failed to tell petitioner that she was unprepared for trial. (Id. at 23-65.) An evidentiary hearing was held on February 18, 2005. (Resp. Exh. I.) On June 15, 2005, the court denied petitioner's post-conviction motion. (Resp. Exh. H at 107-117.)

Petitioner appealed the denial of his post-conviction motion to the Missouri Court of Appeals, alleging all of the foregoing ineffective assistance claims. (Resp. Exh. J.) On June 27, 2006, the Missouri Court of Appeals affirmed the motion court's judgment. (Resp. Exh. L); Jones v. State, 195 S.W.3d 18 (Mo. Ct. App. 2006).

In the instant petition, petitioner alleges six claims of

ineffective assistance of counsel. Specifically, petitioner alleges that trial counsel was ineffective because she:

> (1) failed to prepare his witnesses Gail Smart, Latecia Adams and Donald Scott for trial, and to fully investigate that Officer Haynes planted cocaine in petitioner's car; told petitioner that he "better rob someone or something" to repay him; and that petitioner was shot prior to calling the FBI;
>
> (2) failed to investigate petitioner's theory of innocence and adequately prepare an opening statement, inasmuch as she made several misstatements;
>
> (3) had an actual conflict of interest because petitioner had unsuccessfully sought her removal from his case;
>
> (4) failed to advise petitioner that all of his felony convictions could be discussed during the state's cross-examination;
>
> (5) failed to investigate FBI agent James Harrison; and
>
> (6) failed to tell petitioner that she was unprepared for trial.
>
> (Docket No. 1.)

## II. Exhaustion Analysis

A petitioner must exhaust his state law remedies before the federal court can grant relief on the merits of his claims in a habeas petition. 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). The Court must first look to see whether the federal constitutional dimensions of the petitioner's claims have been fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988); see also Boerckel, 526

U.S. at 848. If not, the petitioner may still meet the exhaustion requirement if there are no currently available non-futile state remedies by which he could present his claims to the state court. Smittie, 843 F.2d at 296. When the petitioner's claims are deemed exhausted because he has no available state court remedy, the federal court still cannot reach the merits of the claims unless the petitioner demonstrates adequate cause to excuse his state court default and actual prejudice resulting from the alleged unconstitutional error, or that a fundamental miscarriage of justice would occur if the Court were not to address the claims. Coleman v. Thompson, 501 U.S. 722 (1991); Wainwright v. Sykes, 433 U.S. 72, 87 (1977); Keithley v. Hopkins, 43 F.3d 1216, 1217 (8th Cir. 1995); Stokes v. Armontrout, 893 F.2d 152, 155 (8th Cir. 1989).

A review of the record shows petitioner's claims for relief to be exhausted either because he properly raised them in state court, or there exists no non-futile state remedy by which he could now pursue his claims. The undersigned further notes that respondent does not allege that any of petitioner's claims remain unexhausted.

## II. Procedural Default Analysis

To avoid procedural default, a petitioner must present his claim at each step of the judicial process in state court. Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994) (citing Benson v.

<u>State</u>, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)).  In Missouri, claims of ineffective assistance of trial counsel must be presented in a motion for post-conviction relief pursuant to Rule 29.15.  <u>See</u> <u>Shigemura v. Groose</u>, 45 F.3d 250, 251 (8th Cir. 1995) (citing <u>State</u> <u>v. Wheat</u>, 775 S.W.2d 155, 157-58 (Mo. banc 1989)).  In addition, to preserve such claims for federal habeas review, the petitioner must also raise them on appeal from the denial of the post-conviction motion. <u>Jolly</u>, 28 F.3d at 53 (citing <u>Gilmore v. Armontrout</u>, 861 F.2d 1061, 1065 (8th Cir. 1988)).

As respondent concedes, petitioner has properly preserved all of his ineffective assistance claims for federal review, inasmuch as he fairly presented them to the Missouri state courts during each stage of his post-conviction proceedings.

## III. Merits of Claims

A review of the record shows the following.  Petitioner was initially represented by Mr. John Krehmeyer, an attorney in the public defender's office.  (Resp. Exh. I at 15-16.)  Due to a conflict, petitioner's case was transferred to Ms. Afoche Ibe, also a public defender, and Ms. Ibe represented petitioner during trial. (<u>Id.</u> at 23-30.)

During petitioner's trial, the following facts were adduced.  On the evening of September 4, 2000, Ms. K.K.[3] was working as a desk clerk at a Holiday Inn Express hotel in

---

[3]To protect her privacy, the desk clerk will be identified herein using only her initials.

Hazelwood, Missouri. (Resp. Exh. B at 113-14.) At approximately 10:00 p.m., a man she identified as petitioner entered the hotel and asked her for change for a dollar. (Id. at 114, 124-25.) When K.K. opened the cash drawer, petitioner told her that he had a gun, and threatened to kill her if she did not give him all of the cash in the drawer. (Id. at 114.) K.K. complied, and petitioner fled with approximately $175.00. (Id. at 114-15; 119-20.) K.K. subsequently called police, who arrested petitioner as he was recklessly driving from the scene. (Resp. Exh. B at 120-22; 132-38.) That same evening, following petitioner's apprehension, K.K. identified petitioner as the man who had robbed her. (Id. at 122.)

As indicated above, the record indicates that petitioner absconded and remained a fugitive until his apprehension on June 11, 2002. (Resp. Exh. A at 27.) During petitioner's trial, the state called FBI agent James T. Harrison. (Resp. Exh. B. at 162.) Agent Harrison testified that, while a member of the St. Louis Metropolitan Fugitive Task Force, he and his partner initiated surveillance of petitioner, and unsuccessfully attempted to apprehend him. (Id. at 163-64.) Explaining this encounter, Agent Harrison testified that he approached petitioner and identified himself, but petitioner immediately fled. (Id. at 165, 166-68.) Agent Harrison testified that petitioner never asked for help, nor did he ask to be taken into protective custody. (Id. at 167.) Agent Harrison testified that he pursued petitioner on foot, but tripped and fell and became temporarily unconscious, which allowed

petitioner to get away. (Resp. Exh. B at 168.) Agent Harrison testified that the pursuit of petitioner ultimately involved the use of "a couple St. Louis County helicopters and several other policemen." (Id. at 169.) Agent Harrison testified that despite these efforts, petitioner was not apprehended. (Id.)

Petitioner also testified during trial regarding, inter alia, his relationship with an acquaintance, a corrupt police officer named Martini Haynes, who was threatening his life and the lives of his family. (Id. at 223-78.) Petitioner explained that he had asked Officer Haynes for a loan in order to repay a debt he owed to another party, a woman named Gail Smart. (Resp. Exh. B at 232.) Petitioner explained that he had borrowed $200.00 from Ms. Smart, but spent it all on drugs. (Id. at 231-32.) Petitioner testified that, instead of loaning him money, Officer Haynes planted a package of crack cocaine in petitioner's car. (Id. at 233-37.) Petitioner testified that, initially, he was unsure of exactly what the package contained, so he took it to the home of a woman who was a "crack head." (Id. at 237.) Petitioner testified that the woman left with the package, smoked some, confirmed that the package contained crack cocaine, and later took the whole bag. (Resp. Exh. B at 237, 242.)

Petitioner testified that Officer Haynes later told petitioner that he had to repay the value of the drugs, and that to do so, he (petitioner) was to make a round-trip drug run from St. Louis to California on behalf of Officer Haynes and an associate.

-8-

(Resp. Exh. B at 242-46.) Petitioner testified that he refused, but that Officer Haynes threatened his life and the lives of his family members if he did not repay the debt. (Id. at 246-78.)

Petitioner testified that he eventually arranged a meeting with Officer Haynes and his associate, under the guise of discussing the drug run. (Id. at 257-59.) Petitioner testified that, when the time for the meeting arrived and he saw the men waiting for him, he went to the Holiday Inn Express, located next to the meeting spot, and robbed the clerk in an effort to get money to give to Officer Haynes. (Resp. Exh. B at 261-66, 278-79.) Despite petitioner's testimony, the jury found him guilty of robbery in the first degree. (Id. at 5-6, 43.)

State court factual findings are presumed to be correct. 28 U.S.C. § 2254(d). State court findings may not be set aside unless they are unsupported by the record, Sumner v. Mata, 449 U.S. 539, 547-49 (1981), and petitioner bears the burden of establishing that the state court's factual determinations are erroneous. Williams v. Armontrout, 912 F.2d 924, 930 (8th Cir. 1990) (en banc). Petitioner herein makes no effort to rebut the foregoing evidence with clear and convincing evidence. Having reviewed the record, the undersigned finds that the state court's findings are supported by the record, and are adopted herein to the extent they apply to the claims petitioner raises in the instant petition. See Williams, 912 F.2d at 930-31.

Section 2254(d)(1) requires federal habeas courts to test

the determinations of state courts "only against 'clearly established Federal law, as determined by the Supreme Court of the United States,'" and prohibits the issuance of a writ of habeas corpus "unless the state court's decision is 'contrary to, or involved an unreasonable application of,' that clearly established law." <u>Williams v. Taylor</u>, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. <u>Id.</u> at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law, or different than the Court's conclusion on a set of materially indistinguishable facts. <u>Williams</u>, 529 U.S. at 412-13; <u>Carter v. Kemna</u>, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. <u>Carter</u>, 255 F.3d at 592 (citing <u>Williams</u>, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." <u>Id.</u> (quoting <u>Williams</u>, 529 U.S. at 410-11).

## IV.  Ineffective Assistance Claims

Petitioner herein advances six claims for relief, all of which are based upon the claim that he was denied the

Constitutionally-guaranteed effective assistance of counsel. At the time petitioner's conviction became final, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that 1) counsel's performance was deficient, and 2) the deficient performance prejudiced his defense. <u>Id.</u> at 687.

In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." <u>Id.</u> at 688. There is a strong presumption that counsel's conduct "might be considered sound trial strategy." <u>Strickland</u>, 466 U.S. at 689 (internal quotation marks and citation omitted). The petitioner bears a heavy burden in overcoming the strong presumption that counsel's conduct fell "within the wide range of reasonable professional assistance." <u>Id.</u> at 689. Decisions relating to trial strategy are "virtually unchallengeable." <u>Id.</u> at 690. To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Id.</u> at 694. A reasonable probability is one sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

It is with the foregoing standards in mind that the undersigned now addresses each of petitioner's ineffective

-11-

assistance claims.

A.  <u>Ground One</u>

For his first claim for relief, petitioner alleges that trial counsel was ineffective because she failed to investigate that Officer Haynes planted cocaine in petitioner's car and told petitioner that he "better rob someone or something" to repay him; and that petitioner had been shot.  Petitioner also claims that counsel failed to prepare him and his witnesses, who would have testified that petitioner had been shot a few days before he called the FBI.  Petitioner claims that, because of the foregoing omissions, he did not receive a jury instruction on the defense of duress.

Petitioner raised this claim in his Rule 29.15 motion for post-conviction relief.  After an evidentiary hearing, the motion court determined that the above-described evidence would have been insufficient to support a duress defense, a fact of which counsel had informed petitioner prior to trial.  The motion court noted the testimony of petitioner's witness Gail Smart, who testified that she could not be completely sure that petitioner had been shot, only that petitioner had told her that he had been shot.  The motion court noted that, even assuming <u>arquendo</u> that petitioner had in fact been shot, petitioner failed to present any evidence demonstrating how the shooting had any nexus to his defense of duress.

Petitioner also raised this claim on appeal from the

denial of his post-conviction motion.  In addressing petitioner's

claim, the Missouri Court of Appeals, citing <u>Strickland</u>, held that,

even if the evidence petitioner described had been discovered and

introduced at trial, it would not have supported an instruction on

the defense of duress.  In so finding, the court wrote:

> Duress is an affirmative defense available
> when a defendant engages in conduct "because
> he was coerced to do so, by the use of, or
> threatened imminent use of, unlawful physical
> force upon him or a third person, which force
> or threatened force a person of reasonable
> firmness in his situation would have been
> unable to resist."   Section 562.071.1 RSMo
> (2000).     The   coercion   must   be   present,
> imminent and impending, and it must be of such
> a   nature   as   to   induce   a   well-grounded
> apprehension   of   death   or   serious   bodily
> injury.   <u>State v. Brown</u>, 58 S.W.3d 649, 657
> (Mo. App. 2001) (quoting <u>State v. Lane</u>, 834
> S.W.2d 242, 245 (Mo. App. 1992)).   "The threat
> cannot be of future action, nor can a person
> who has a reasonable opportunity to avoid the
> act claim duress as a defense."  <u>Id.</u> (quoting
> <u>Lane</u>, 834 S.W.2d at 245.)

(Resp. Exh. L at 4-5.)

The court also noted petitioner's offered and rejected

jury instruction, which would have required the jury to find, <u>inter</u>

<u>alia</u>, that the police officer threatened the use of imminent

physical force against petitioner and his family; that this threat

was such that petitioner could not resist; and that petitioner was

therefore coerced into committing robbery.  (<u>Id.</u> at 5.)  The court

concluded that none of the evidence that petitioner claimed counsel

should have investigated and introduced would have supported

findings of a threat of "imminent" force; that anyone coerced him

-13-

into robbing the clerk; or that petitioner would have been unable to resist the threat. The court wrote "[t]hus, even if that evidence had been admitted at trial, it would have been insufficient to support an instruction on duress." (Id.)

The state court's decision is well-based on law and fact, and petitioner has not shown that it is contrary to, or that it involved an unreasonable application of, clearly established Supreme Court precedent. See 28 U.S.C. § 2254(d)(1). Examination of the record reveals that counsel's performance was not deficient. Petitioner's argument that counsel failed to investigate his witnesses is simply not supported by the record. During the evidentiary hearing, counsel testified that, based upon her conversations with petitioner before trial, she knew what testimony his witnesses would offer. (Resp. Exh. I at 26.) Counsel further testified that she spoke to petitioner's witnesses on the day of trial, and they told her that the only testimony they could offer was what petitioner had told them. (Id.) Counsel further testified that she informed the witnesses that, in order for them to be able to testify, they had to have first-hand information, and could not testify regarding what they were told by petitioner. (Id.) Petitioner does not rebut this factual finding by clear and convincing evidence and, as such, this Court presumes such finding to be correct. 28 U.S.C. § 2254(e)(1).

Furthermore, the evidence petitioner claims counsel did not investigate or present would not have supported petitioner's

-14-

theory of defense. Addressing petitioner's point in state court, the Missouri Court of Appeals correctly applied the Strickland standard, and found that trial counsel was not ineffective for failing to adduce and elicit the above-described evidence. In so finding, the court noted that none of the evidence petitioner described would have supported a duress defense, inasmuch as none of it would have supported the necessary findings of (1) a threat of "imminent" force; (2) that anyone coerced petitioner into robbing the clerk; or (3) that petitioner would have been unable to resist the threat. (Id.) Counsel cannot be said to be ineffective in failing to pursue a matter upon which there was no reasonable likelihood of success. See Smith v. Armontrout, 888 F.2d 530, 545 (8th Cir. 1989); see also Thai v. Mapes, 412 F.3d 970, 978 (8th Cir. 2005) (failure to raise a meritless argument did not constitute deficient performance); Burton v. Dormire, 295 F.3d 839, 846 (8th Cir. 2002) (cannot fault counsel for failing to raise an issue if no relief could possibly have been obtained).

Even if petitioner could demonstrate that counsel's performance was deficient, he could not show that he was prejudiced thereby. To show prejudice, petitioner would be required to demonstrate a "reasonable probability" that the result of the proceeding would have been different but for counsel's errors. Strickland, 466 U.S. at 694. Petitioner herein could not so demonstrate. As noted above, there is no reasonable probability that, had the foregoing evidence been admitted at trial, it would

have resulted in the court instructing the jury on a duress defense, or that it would have changed the jury's verdict. The undersigned therefore cannot conclude that the alleged errors were prejudicial. <u>Strickland</u>, 466 U.S. at 687; <u>see also</u> <u>Blankenship v. United States</u>, 159 F.3d 336, 338 (8th Cir. 1998) (counsel's failure to pursue a non-meritorious issue cannot support a finding of prejudice.)

As such, the decision of the Missouri Court of Appeals that counsel was not ineffective was neither contrary to nor an unreasonable application of clearly established federal law. Nor has petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the claim raised in Ground One of the instant petition should be denied. 28 U.S.C. § 2254(d).

B.  <u>Ground Two</u>

For his second claim for relief, petitioner argues that trial counsel was ineffective for failing to investigate petitioner's theory of innocence, and adequately prepare an opening statement. Quoting directly from petitioner's Petition, he alleges that, during her opening statement, counsel made the following misstatements:

> '[Movant Jones] didn't have money and [Movant
> Jones] borrowed money from [Officer Haynes]
> and [Movant Jones] borrowed money from

[Officer Haynes] and [Officer Haynes] lented [Movant Jones] money' [sic] (Tr. 180) that 'Instead of lending Mr. Jones money, the officer gave Mr. Jones some cocaine to sell' (Tr. 180) That Movant Jones 'ingested the drugs instead of selling them' (Tr. 180) that 'Officer Haynes wanted to rent a truck and have Mr. Jones drive to west coast and sell and bring back money' (Tr. 180) and that 'Mr. Jones will testify that this guy and some other people were caught making phone calls' (Tr. 180).

(Docket No. 1 at 14.)

Petitioner argues that the foregoing were misstatements, inasmuch as: (1) he never told counsel that Officer Haynes lent him money but instead told her that Officer Haynes planted cocaine in his car; (2) he never told counsel that he ingested the drugs but told her that they were stolen from him; (3) he never told trial counsel that he was going to the west coast to sell drugs but told her that Officer Haynes was going to rent a van for him to drive to California, drop off overnight and then pick up the van and return to St. Louis with drugs hidden inside; and (3) he never "caught" anyone making phone calls. (Id. at 14-15.) Petitioner argues that counsel therefore misstated the facts, contradicted the evidence adduced at trial, and confused the jury. Petitioner also argues that counsel's misstatements prove that she was unprepared and never investigated his "theory of innocence." (Docket No. 1 at 15.)

Petitioner raised this claim in his Rule 29.15 motion for post-conviction relief. In denying this claim, the motion court

noted that petitioner testified during his deposition that counsel only met with him four or five times before trial. The motion court noted that, during the evidentiary hearing, this testimony was refuted when counsel testified that she met with petitioner ten times before trial, testimony that was corroborated by the county jail visitor records. The motion court concluded that petitioner's claims were not credible, and also found that petitioner failed to demonstrate that he suffered any prejudice.

Petitioner also raised this claim on appeal from the denial of his post-conviction motion. In affirming the motion court, the Missouri Court of Appeals, having noted the <u>Strickland</u> standard, wrote that, while most of counsel's remarks were consistent with the evidence adduced at trial and with what petitioner had told her, it would not reach that issue because petitioner failed to demonstrate prejudice. In so finding, the court wrote that petitioner "did not demonstrate that the jury did not follow the trial court's instruction that 'opening statements are not evidence.' The court further noted that, because the jury had not been instructed on duress, counsel's allegedly offending statements were irrelevant to the issues the jury had to decide.

The state court's decision was well-based on law and fact and did not involve an unreasonable application of clearly established Supreme Court precedent. As noted above, to prevail on a Sixth Amendment ineffective assistance of counsel claim, petitioner must establish not only that counsel's performance was

deficient, but that such deficient performance prejudiced him. Armstrong v. Kemna, 534 F.3d 857, 863 (8th Cir. 2008) (citing Strickland, 466 U.S. at 687-94.) If it is determined that no prejudice resulted from counsel's alleged deficiencies, it is unnecessary to inquire into the question of counsel's effectiveness. Hoon v. Iowa, 313 F.3d 1058, 1061 (8th Cir. 2002) (citing Strickland, 466 U.S. at 697); see also Gianakos v. U.S., 560 F.3d 817, 821 (8th Cir. 2009). In determining whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on the grounds of evidentiary insufficiency, that the judge or jury acted in accordance with the law. Strickland, 466 U.S. at 694.

The record shows that petitioner's jury was instructed that the opening statements of attorneys were not evidence, (Resp. Exh. A at 33), and petitioner does not establish that the jury disregarded this instruction. Supreme Court precedent supports the presumption that the jury followed the instruction, and did not consider trial counsel's opening statement as evidence. See Greer v. Miller, 453 U.S. 756, 767 n. 8 (1987) (it is presumed that a jury follows an instruction unless there is an overwhelming probability that the jury will be unable to do so, and the effect of the evidence would be devastating to the defendant.) It therefore cannot be said that the alleged misstatements prejudiced the outcome of petitioner's trial, inasmuch as the jury would not have considered them as evidence.

Furthermore, while counsel's statements were somewhat inconsistent with petitioner's testimony (inasmuch as petitioner did not testify that he actually "caught" anyone making phone calls and did not testify that he ingested the drugs Officer Haynes planted), the statements were not so grossly inconsistent with petitioner's version of events that they undermine the undersigned's confidence in petitioner's conviction. Finally, as the Missouri Court of Appeals noted, petitioner cannot demonstrate prejudice because counsel's alleged misstatements related to a defense upon which the jury had not been instructed. Petitioner therefore fails to demonstrate prejudice.

Petitioner does not offer, nor is the undersigned aware, of any clearly established federal law, as determined by the United States Supreme Court, of which the state court's decision runs afoul. Petitioner has not shown that the state court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). Petitioner's claim in Ground Two should therefore be denied.

C. <u>Ground Three</u>

For his third claim for relief, petitioner argues that trial counsel suffered from an actual conflict of interest, inasmuch as petitioner had unsuccessfully sought to have her removed from his case on the grounds of lack of preparation.

Petitioner raised this claim in his Rule 29.15 motion for

post-conviction relief.  The motion court found that counsel's performance was not adversely affected, noting that she had been "a zealous and well-prepared attorney" who made timely objections, closely cross-examined the state's witnesses, "took aim at the State's weakest points and pursued avenues most advantageous to acquittal," and gave a cogent closing argument.  (Resp. Exh. H at 112.)  The motion court concluded that petitioner had failed to satisfy the first prong of Strickland.  (Id.)

Petitioner also raised this claim on appeal from the denial of his post-conviction motion.  In affirming the motion court, the Missouri Court of Appeals thoroughly analyzed petitioner's claim, noting the relevant testimony from petitioner and counsel during the evidentiary hearing.  The court noted that counsel testified that the attorney-client relationship did not deteriorate after petitioner spoke to counsel's supervisor, and that she complied with petitioner's request to ask the court if it would still give him the twelve years that the state had originally offered if he pleaded guilty.  The court also noted petitioner's testimony that he asked counsel to release herself; that counsel told him that the court would not release her; and that counsel's supervisor denied petitioner's request to substitute counsel prior to trial; and that he and counsel argued about taking the case to trial.  The court noted that the motion court had found that petitioner did not satisfy the first prong of Strickland, inasmuch as counsel was "'a zealous and well-prepared attorney' who made

timely objections, closely cross-examined the state's witnesses, took aim at the state's weakest points, pursued avenues most advantageous to acquittal, and gave a cogent closing argument." (Resp. Exh. L at 7.) The court continued as follows:

> To prevail on a claim of ineffective assistance of counsel based on counsel's conflict of interest, a movant must show "that an actual conflict of interest adversely affected counsel's performance." State v. Roll, 942 S.W.2d 370, 377 (Mo. banc 1997), cert. denied, 522 U.S. 954 (1997). "Prejudice [from a conflict of interest] is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" Strickland, 466 U.S. at 692, 104 S.Ct. at 2067 (quoting Cuyler v. Sullivan, 446 U.S. 335, 348, 350, 100 S.Ct. 1708, 1718-19, 64 L.Ed.2d 333 (1980); see also Yoakum v. State, 849 S.W.2d 685, 689 (Mo. App. 1993). Therefore, in order for a movant to be entitled to a presumption that he was prejudiced by a conflict, he must demonstrate that 1) trial counsel actively represented conflicting interests, and 2) the actual conflict of interest adversely affected his performance. If movant does not show both of these prongs, he is not entitled to a presumption of Strickland prejudice. See Amrine v. State, 785 S.W.2d 531, 535 (Mo. banc 1990), cert. denied 498 U.S. 881 (1990).

> In order to establish an actual conflict of interest, a movant "bears the burden of demonstrating that counsel did something or failed to do something, which was detrimental to movant's interests and advantageous to the person whose interests conflict with movant's interests." State v. Anderson, 867 S.W.2d 571, 577 (Mo. App. 1993); see also Helmig v. State, 42 S.W.3d 658, 680 (Mo. App. 2001). "Furthermore, the mere existence of a possible conflict of interest does not automatically

preclude effective representation." <u>Helmig</u>,
42 S.W.3d at 680.

Movant did not demonstrate an actual
conflict of interest. There was no evidence
that counsel did anything that was detrimental
to movant's interests and advantageous to
counsel's interests. Although the ultimate
result was detrimental to movant's interests,
movant did not show that the result was
advantageous to counsel's interests. A
disagreement over trial strategy does not
indicate that counsel is representing
conflicting interests. United States v.
Leggett, 81 F.3d 220, 227 (D.C. Cir. 1996).

Movant also failed to demonstrate how any
theoretical conflict adversely affected
counsel's representation of movant. Ms. Ibe
testified at the evidentiary hearing that the
attorney-client relationship did not
deteriorate after movant contacted her
supervisor. Ms. Ibe allowed movant to testify
at trial about the police officer planting the
cocaine, demanding money, and threatening him,
and the remaining details of his explanation
for robbing the clerk. She requested the
court to give two duress instructions. The
record establishes that Ms. Ibe continued to
be an advocate for movant, and refutes
movant's claim that he was prejudiced because
counsel no longer advocated for him. Point
three is denied.

(<u>Id.</u> at 7-8.)

At the time petitioner's conviction became final, the law

was clearly established that the Sixth Amendment right to counsel

includes the right to representation that is free from conflicts of

interest. <u>Wood v. Georgia</u>, 450 U.S. 261, 271 (1981); <u>Cuyler v.</u>

<u>Sullivan</u>, 446 U.S. 335, 348 (1980). As discussed above, to prevail

on a claim of ineffective assistance of counsel, <u>Strickland</u>

requires that petitioner show deficient performance resulting in

prejudice. In limited circumstances, such as where a petitioner can show that "an actual conflict of interest adversely affected his lawyer's performance," courts will presume prejudice, thereby relieving the petitioner from the burden of making an affirmative showing. Cuyler, 446 U.S. at 348; see also Johnson v. Norris, 207 F.3d 515, 519 (8th Cir. 2000) (A claim for ineffective assistance of counsel arising from a conflict of interest does not require proof of the prejudice component of the Strickland test.) An "actual conflict," for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance. Mickens v. Taylor, 535 U.S. 162, 172 n. 5 (2002) (explaining that the term "actual conflict" embraces both the cause and effect elements of Cuyler, inasmuch as an actual conflict, for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance.)

The Cuyler standard does not, however, necessarily encompass all allegations of attorney conflict. Mickens, 535 U.S. at 174-75. In Mickens, the Court noted that the Cuyler standard was not expressly extended to cases involving conflicts other than those arising from multiple or serial representation, and the Eighth Circuit has not determined whether it should be applied to cases such as the one at bar. Mickens, 535 U.S. at 176; Covey v. U.S., 377 F.3d 903, 907 (8th Cir. 2004) ("In this circuit, it is unclear whether we limit application of Cuyler to conflicts involving multiple or serial representation.")

Having analyzed petitioner's claim, the undersigned concludes, as did the Covey court, that choosing between Cuyler and Strickland is unnecessary in this case, because petitioner's claim fails under either rule. See also Winfield v. Roper, 460 F.3d 1026, 1039 (8th Cir. 2006).

Cuyler requires a petitioner to show that an actual conflict of interest adversely affected his defense. Cuyler, 446 U.S. at 348. To prevail, petitioner would have to identify "some actual and demonstrable adverse effect on the case, not merely an abstract or theoretical one." Covey, 377 F.3d at 908 (citing United States v. Flynn, 87 F.3d 996, 1001 (8th Cir. 1996)). To establish the presence of a conflict, petitioner must show "that the conflict caused the attorney's choice" to engage or not to engage in particular conduct. Covey, 377 F.3d at 908 (quoting McFarland v. Yukins, 356 F.3d 688, 705 (6th Cir.2004)); see also Winfield, 460 F.3d at 1039. To so demonstrate, petitioner must "identify a plausible alternative defense strategy or tactic that defense counsel might have pursued," "show that the alternative strategy was objectively reasonable under the facts of the case," and "establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." Winfield, 460 F.3d at 1039 (citing Covey, 377 F.3d at 908) (internal citations omitted.)

In the case at bar, petitioner lodges several unsupported complaints about his attorney's conduct, including her failure to

support his defense strategy and failure to investigate his witnesses. Petitioner's allegations simply fail to support his assertion that counsel labored under a conflict. Petitioner does not identify a reasonable alternative that counsel should have pursued. In fact, counsel allowed petitioner to pursue the duress defense he wished, allowing him to testify at length regarding his interactions with Officer Haynes, and requesting that the court instruct the jury on duress. The record also indicates that counsel investigated his witnesses. Moreover, even assuming that petitioner's allegations regarding counsel's performance are correct, petitioner fails to demonstrate how that performance was in any way linked to the alleged conflict.

Even presuming, for the sake of argument, that there was a conflict of interest in this case, petitioner fails to demonstrate the presence of an "actual conflict" for Sixth Amendment purposes because he cannot demonstrate that the conflict adversely affected counsel's performance. See Mickens, 535 U.S. at 172 n. 5 (An "actual conflict," for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance.) As noted above, the record clearly demonstrates that, despite any alleged conflict, counsel permitted petitioner to testify in detail about being threatened by the corrupt police officer and how that led him to rob the clerk, and also moved the court to instruct the jury on duress. In addition, despite petitioner's conclusory statements that counsel was unprepared for

trial and failed to investigate his witnesses, the state court found, and the record supports the conclusion, that counsel was well-prepared for trial, and that she talked to petitioner's witnesses and discovered that they had only hearsay testimony to offer. The state court also noted counsel's evidentiary hearing testimony in which she stated that the attorney-client relationship remained intact even after petitioner contacted her supervisor. The undersigned concludes, as did the state court, that counsel continued to advocate for petitioner, despite his contention that she stopped doing so due to a conflict. Petitioner cannot demonstrate that the alleged conflict had any effect on counsel's performance at all, much less an adverse one.

For these same reasons, petitioner was not prejudiced within the meaning of Strickland, nor was his attorney's performance deficient. As noted above, in assessing counsel's performance under Strickland, courts defer to reasonable trial strategies, and presume that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689. A showing of Strickland prejudice requires a court to determine that there is a reasonable probability, sufficient to undermine confidence in the outcome, that, but for counsel's unprofessional error, the result of the proceeding would have been different. Id. at 694. In this case, even assuming a conflict existed, the government presented overwhelming evidence of petitioner's guilt, thus removing any doubt in the ability to rely

upon the result of petitioner's trial. Furthermore, as the state court noted and as discussed above, counsel conducted an appropriate investigation, and allowed petitioner to testify and present the defense he wished, and the jury convicted him nonetheless. The undersigned therefore cannot say that petitioner has shown anything undermining confidence in the outcome of his trial, and his claim thus fails under <u>Strickland</u>.

Petitioner does not offer, nor is the undersigned aware, of any clearly established federal law, as determined by the United States Supreme Court, of which the state court's decision runs afoul. Petitioner has not shown that the state court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). Petitioner's claim in Ground Three should therefore be denied.


D.   <u>Ground Four</u>

For his fourth claim for relief, petitioner argues that counsel was ineffective because she failed to advise him that, should he testify on his own behalf, the state could impeach his credibility with all of his prior felony convictions. Petitioner claims that, instead, counsel told him that the state would only be permitted to ask him about the two felonies pled in the indictment.

Petitioner raised this claim in his post-conviction motion. In denying the claim, the motion court considered the

evidentiary hearing testimony offered by trial counsel and by Mr. Krehmeyer, petitioner's former counsel, both of whom testified that they specifically advised petitioner that all of his prior felonies could be revealed if he testified on his own behalf. Having considered the testimony, the motion court held that petitioner was not credible, and further held that petitioner failed to demonstrate that he suffered any prejudice. (Resp. Exh. H at 112.)

Petitioner also raised this claim on appeal from the denial of his post-conviction motion. In affirming the motion court, the Missouri Court of Appeals noted that the motion court had credited the testimony of both attorneys over petitioner's. The court also noted that, before petitioner took the stand, the trial court advised him that, if he testified, the state could cross-examine him regarding all of his prior felonies. The Missouri Court of Appeals concluded that it was bound by the motion court's witness credibility determination, and denied petitioner's claim for relief. (Resp. Exh. L at 9-10.)

The state court's decision was well-based on law and fact, and petitioner has not shown that it is contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. See 28 U.S.C. § 2254(d)(1). A state court's credibility determinations regarding the facts underlying a habeas claim are entitled to a presumption of correctness, and should not be attacked in a federal habeas case. Cox v. Lockhart, 970 F.2d 448, 452 (8th Cir. 1992) (citing Pittman v. Black, 764

F.2d 545, 546 (8th Cir. 1985)).  This Court's role is "merely to determine if the state court's findings have fair support in the record."  Id.

Having reviewed the motion court's credibility determination, the undersigned concludes that it is fairly supported by the record.  During petitioner's evidentiary hearing, trial counsel testified that she told petitioner that "once he took the stand that every felony he had committed would be public.  Will be, you know, he'll be interrogated regarding all his prior felonies regardless of how old."  (Resp. Exh. I at 29.)  Mr. Krehmeyer also testified that he had told petitioner that all of his felony convictions could be revealed should he take the stand.  (Id. at 20-21.)  In addition, as the Missouri Court of Appeals noted, the trial court addressed petitioner before he testified, advised him that he was not required to testify, and stated: "Once you testify the prosecutor also has an opportunity to cross-examine you and one thing, I'm sure [your attorney] explained this to you, the prosecutor may choose to ask you with regard to prior convictions, which would otherwise not be before the jury.  Do you understand that, sir?"  (Resp. Exh. B at 198.)  Petitioner replied that he understood.  Id.

In accepting the state court's credibility determination, the undersigned necessarily determines that petitioner fails to satisfy the first prong of Strickland: that counsel's performance was deficient.  The state court's credibility determination

establishes that trial counsel correctly advised petitioner that, should he choose to testify in his own defense, the state would be able to impeach him with all of his prior felony convictions. The undersigned therefore determines that trial counsel's actions were not objectively unreasonable, but rather fell within the wide range of professionally competent assistance under <u>Strickland</u>.

In addition, the undersigned notes that petitioner would also be unable to establish prejudice, inasmuch as he would be unable to show that the results of his trial would have been different but for counsel's unprofessional error. As noted above, the record demonstrates that petitioner was advised regarding the potential scope of cross-examination by his former attorney, and by the trial court before he took the stand. Therefore, even if it could be said that counsel's performance was deficient because she misadvised petitioner, it could not be said that such deficient performance prejudiced petitioner's case, inasmuch as petitioner received the correct advice on two other occasions. <u>Strickland</u>, 466 U.S. at 694 (to establish prejudice, a habeas petitioner must demonstrate that, but for counsel's unprofessional error, the result of the proceedings would have been different.)

Petitioner does not offer, nor is the undersigned aware, of any clearly established federal law, as determined by the United States Supreme Court, of which the state court's decision runs afoul. Petitioner has not shown that the state court's determination "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). Petitioner's claim in Ground Four should therefore be denied.

   E.   Ground Five

        For his fifth claim for relief, petitioner argues that counsel was ineffective for failing to investigate and cross-examine state's witness Agent Harrison. In denying the claim, the motion court noted trial counsel's hearing testimony, in which she testified that Agent Harrison offered damaging testimony, inasmuch as it contradicted petitioner's theory of defense. Counsel also testified that she believed that there was no benefit to be gained from cross-examining Agent Harrison, inasmuch as he could not offer testimony relevant to petitioner's defense. The motion court noted that, while petitioner claimed that trial counsel should have elicited Agent Harrison's opinion regarding whether petitioner was trying to flee from him or whether petitioner had been threatened, Agent Harrison in fact answered these very questions on direct examination. Furthermore, as noted above, the motion court had found that counsel conducted a proper investigation. The motion court concluded that trial counsel's decision to limit any further incriminating evidence was based on reasonable trial strategy, and denied petitioner's claim. (Resp. Exh. H at 113.)

        Petitioner also raised this claim on appeal from the denial of his post-conviction motion. In affirming the motion

court, the Missouri Court of Appeals, having noted the Strickland standard, noted the motion court's findings regarding trial counsel's decision to not cross-examine Agent Harrison, and concluded that petitioner had not overcome the presumption that counsel's decision to not cross-examine the agent was sound trial strategy. In so finding, the court noted that an attorney's decisions regarding cross-examination are generally matters of trial strategy left to the judgment of counsel, and that an attorney cannot be deemed ineffective for failing to elicit damaging testimony. (Resp. Exh. L at 10-11.) The state court's decision was well-based on law and fact, and petitioner cannot show that it was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. See 28 U.S.C. § 2254(d).

### i. Failure to Investigate Agent Harrison

Regarding petitioner's contention that counsel was ineffective for failing to investigate Agent Harrison, petitioner fails to demonstrate either prong of Strickland. In support of his claim, petitioner avers that counsel, during trial, had to ask the state who Agent Harrison was. However, the record does not support this contention. To the contrary, as discussed above, the state court had previously found that counsel was zealous advocate on petitioner's behalf, was well-prepared for trial, met with petitioner numerous times before trial, and thoroughly investigated his case.

Even if petitioner could demonstrate deficient performance due to counsel's alleged failure to investigate Agent Harrison, petitioner would be unable to demonstrate prejudice. Petitioner argues that counsel's lack of investigation caused him to be deprived of the opportunity to knowingly consider the state's plea offer. To the contrary, however, counsel testified during the evidentiary hearing that she advised petitioner that there were insufficient facts to support a duress defense, but petitioner nonetheless insisted on pursuing it. (Resp. Exh. I at 25.) Counsel also testified that she had recommended to petitioner that he accept the state's plea offer, and that when she did, petitioner told her she was a bad attorney and asked her to remove herself from the case. (Id. at 28, 30.) The record shows that petitioner repeatedly refused counsel's advice, and he fails to demonstrate herein that he would have suddenly begun following it had counsel conducted her investigation differently and/or advised him differently. See Wanatee v. Ault, 259 F.3d 700, 703-04 (8th Cir. 2001) (a habeas petitioner who rejects a plea offer due to attorney error can establish prejudice under Strickland by demonstrating that he would have accepted the plea but for counsel's advice, and that had he done so, he would have received a lesser sentence.)

ii. Failure to Cross-Examine Agent Harrison

Nor can counsel be deemed ineffective for failing to cross-examine Agent Harrison. In order to prevail on this claim, petitioner must overcome the presumption that counsel's decision

not to cross-examine Agent Harrison was sound trial strategy. Williams v. Bowersox, 340 F.3d 667, 669 (8th Cir. 2003). Defense tactics and decisions regarding witnesses are ordinarily matters of trial strategy, and will not support a claim of ineffective assistance of counsel. Id.

Petitioner herein cannot show that counsel's decision to not cross-examine the agent was anything other than reasonable trial strategy. The record shows that counsel made a strategic decision to not cross-examine the agent after listening to his testimony, inasmuch as he had no testimony to offer that would support petitioner's duress defense, and counsel was of the opinion that further questioning of the agent would not only be unhelpful, but may even cause further damage. Strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. See Strickland, 466 U.S. 668; see also Bell v. Cone, 535 U.S. 685, 698 (2002) (decisions related to trial strategy, if reasonable at the time, cannot form the basis for ineffective assistance claims); see also Francis v. Miller, 557 F.3d 894, 901 (8th Cir. 2009). It cannot be said that counsel was ineffective for failing to adduce unhelpful testimony, and the undersigned therefore cannot conclude that counsel's performance was outside "the wide range of reasonable professional assistance" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 689.

Nor could petitioner demonstrate prejudice, inasmuch as

he would be unable to show that the results of the proceedings would be different but for any error on counsel's part.  Id. at 694.  As noted above, counsel determined that Agent Harrison could offer no testimony helpful to petitioner's case, and therefore declined to cross-examine him.  In discussing petitioner's allegation regarding counsel's failure to cross-examine Agent Harrison, the Missouri Court of Appeals, having found that counsel's performance was not deficient, wrote "Moreover, movant's allegation of prejudice is not supported by the record because the state did not argue at trial that movant was not threatened because he was on the run."  (Resp. Exh. L at 11.)  To the contrary, the undersigned notes that, during closing argument, the prosecutor made the following statement:  "She just got done saying, [petitioner's counsel] just got done saying the defendant would rather be in jail than out there with police officer Haynes.  Why did he run and stay at large and stay on the street all this time. He never showed up for court for trial.  Why didn't he turn himself in?  He wanted to be out on the street if he felt so threatened. It doesn't make sense, folks."  (Resp. Exh. B at 343.)

To establish entitlement to federal habeas relief, petitioner must show that the state court's resolution of his claim of ineffective assistance of counsel "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1); See Rompilla v. Beard, 545

U.S. 374, 380 (2005).  An "unreasonable application" occurs when a state court identifies the correct governing legal principle from Supreme Court precedent, but unreasonably applies it to the facts of the case.  Id. (citing Wiggins v. Smith, 539 U.S. 510, 520 (2003) (citation omitted).  That is, "the state court's decision must have been [not only] incorrect or erroneous [but] objectively unreasonable."  Id. (internal citations omitted.)

     While the Missouri Court of Appeals erroneously stated that the prosecution did not argue that petitioner was not threatened because he was on the run, the undersigned cannot say that the state court's adjudication of the matter "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1).  First, as discussed above, the state court had already properly found that petitioner failed to demonstrate deficient performance as required by Strickland.  If a habeas petitioner fails to demonstrate deficient performance, the court need not inquire into the prejudice prong of the Strickland test.  U.S. v. Walker, 324 F.3d 1032, 1040 (8th Cir. 2003).

     In addition, while not for the reason articulated by the state court, petitioner cannot demonstrate prejudice resulting from counsel's failure to cross-examine Agent Harrison.  To do so, petitioner would be required to demonstrate a "reasonable probability" that the result of the proceeding would have been

-37-

different but for counsel's unprofessional errors. <u>Strickland</u>, 466 U.S. at 694. Agent Harrison offered damaging testimony during the state's direct examination, and petitioner herein fails to demonstrate how counsel could have mitigated such damage on cross-examination. The record further demonstrates that the evidence against petitioner was overwhelming, thereby removing doubts as to the reliability of petitioner's conviction. The fact that the Missouri Court of Appeals failed to recognize that the state argued that petitioner was not threatened because he was on the run does not render the state court's decision objectively unreasonable.

Petitioner does not offer, nor is the undersigned aware, of any clearly established federal law, as determined by the United States Supreme Court, of which the state court's decision runs afoul. Petitioner has not shown that the state court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). Petitioner's claim in Ground Five should therefore be denied.

F. <u>Ground Six</u>

For his sixth claim for relief, petitioner argues that counsel was ineffective for failing to tell him that she was not prepared for trial. In support of this claim, petitioner argues that trial counsel failed to investigate his priors and Agent Harrison, and that, had counsel informed petitioner that she was unprepared, he would have either requested a continuance or

accepted the state's guilty plea.

Petitioner raised this claim in his post-conviction motion. In denying this claim, the motion court noted that it had previously determined that counsel was a zealous and well-prepared advocate during trial. (Resp. Exh. H at 109-11, 113.) Petitioner also raised this claim on appeal from the denial of his post-conviction motion. Affirming the motion court, the Missouri Court of Appeals held that, because the record established that counsel was prepared, counsel could not be found ineffective for not disclosing that she was unprepared. (Resp. Exh. L at 11.)

The state court's decision denying petitioner relief on this claim was well-based on law and fact. Petitioner does not offer, nor is the undersigned aware, of any clearly established federal law, as determined by the Supreme Court, of which the state court's decision runs afoul, nor has petitioner shown that the state court's decision resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence. See 28 U.S.C. § 2254(d). For the reasons discussed in detail above, the record in this case does not support the conclusion that counsel was unprepared for trial, or that her investigation was inadequate, and petitioner's claim therefore has no support in the record. During the evidentiary hearing, counsel testified that she met with petitioner on ten occasions before trial, sometimes for hours, testimony corroborated by jail visitor records. Counsel also testified that she discussed with petitioner his allegations

-39-

regarding Officer Haynes, and stated that she advised petitioner that his factual allegations would not support a duress defense, but that petitioner wished to proceed anyway. The record further demonstrates that counsel recommended to petitioner that he accept the state's guilty plea, but that he refused, calling counsel a bad lawyer and demanding her removal. The record further shows that counsel allowed petitioner to testify that Officer Haynes planted cocaine in his car, demanded money and threatened violence, and the other details of petitioner's explanation for why he robbed the clerk. The trial transcript shows that counsel advocated for petitioner during trial, offering timely and appropriate objections, and cross-examining the state's witnesses when appropriate. Furthermore, it appears that petitioner's contention that counsel was unprepared has more to do with petitioner and counsel's disagreement over trial strategy than with any actual evidence that counsel was unprepared for trial. The record simply fails to demonstrate that counsel was anything other than a well-prepared and zealous advocate for petitioner, and it therefore cannot be said that she was ineffective for failing to tell petitioner that she was unprepared for trial. Petitioner's claim in Ground Six should therefore be denied.

Petitioner herein also requests an evidentiary hearing. Having reviewed the record, the undersigned determines that no evidentiary hearing is required on any issue, because the record conclusively shows that petitioner's allegations either cannot be

accepted as true, because they are contradicted by the record, or that, even if his allegations were accepted as true, they would not entitle him to relief.  See Schriro v. Landrigan, --- U.S. ---, 127 S.Ct. 1933, 1940 (2007).


Therefore, for all of the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that petitioner Rodney D. Jones's Petition for Writ of Habeas Corpus be dismissed without further proceedings.

The parties are advised that they have to and including August 18, 2009 to file objections to this Report and Recommendation.  See 28 U.S.C. § 636(b)(1).  Failure to timely file objections may result in waiver of the right to appeal questions of fact.  Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).


Frederick R. Buckles
UNITED STATES MAGISTRATE JUDGE


Dated this 7th day of August, 2009.